# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

PRISCELLA YATES                      )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      C.A. No. CPU4-13-003480
                                     )
KAREN BREZIAL, PRISCELLA             )
BREZIAL and STAR K. JACKSON          )
                                     )
            Defendants.              )
                                     )

Submitted: November 14, 2014
Decided: December 12, 2014
Revised:  December 16, 2014

Priscella Yates                              Jonathan Layton, Esquire
427 North Church Street                      Layton & Associates, P.A.
Wilmington, DE 19801                         1823 West 16th Street
  *Self-Represented Plaintiff*               Wilmington, DE 19806
                                               *Attorney for Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

Plaintiff Priscella Yates ("Yates") brought this action for assault and battery against Karen Brezial ("Karen"), Priscella Brezial ("Priscella"), and Star K. Jackson ("Star") (collectively, "Defendants"). Trial took place on November 14, 2014. The Court heard testimony from seven witnesses,[1] and received documentary evidence from both parties.[2] At the conclusion of trial, the Court reserved decision. This is the Court's decision after trial.

## PROCEDURAL HISTORY

On November 13, 2013, Yates filed this action, seeking monetary damages for alleged injuries she sustained from an altercation with Defendants.[3] On July 30, 2014, Star filed an answer and counterclaim, seeking to recover $2,500.00 for harassment and undue stress.[4] On August 21, 2014, Karen filed an answer and requested that the case be dismissed. On September 10, 2013, Priscella filed an answer and asserted self-defense as an affirmative defense to the asserted claims.[5]

Defendants initially proceeded *pro se*, however, counsel entered his appearance for Jackson and ultimately represented all three Defendants at trial. During trial, Defendants did not pursue any counterclaims. Instead, Defendants requested a dismissal of Yates' claims.

---

[1] Priscella Yates and Laura Brezial testified during Plaintiff's case-in-chief. Five witnesses testified during the Defendants' case-in-chief: Leo Jackson, Mary Brezial, Star Jackson, Karen Brezial, and Priscella Brezial.

[2] Plaintiff's Exhibits 1 through 11 were admitted into evidence. Defendants' Exhibits 1 through 8 were also admitted into evidence.

[3] In her Complaint, Yates did not indicate that she was seeking a certain amount of damages. During trial, however, Yates testified that she was seeking $15,000.00 from each Defendant because "someone told her" that was the monetary limit for which she could recover.

[4] Jackson titled her filing as a motion to dismiss, however, the Court is treating the filing as an answer.

[5] Specifically, Priscella claimed that she punched Yates *after* Yates began choking her.

2

## FACTS

The parties in this matter are related. Yates is Defendants' maternal aunt, Karen and Priscella are sisters, and Star is their cousin. It is undisputed that the parties were involved in an altercation in July 2013. The parties, however, disagree on who instigated the altercation and what transpired during the altercation. After considering all of the evidence presented at trial, the Court has distilled the facts and the parties' version of events as follows:

On July 3, 2013, Yates and Defendants were involved in an altercation at the home of Laura Brezial ("Laura"), who is Yates' mother and Defendants' grandmother.[6] Tension between Yates and Karen began in the late afternoon, after Yates approached Karen and informed her that she owed money and cigarettes to Yates' boyfriend. The two women began arguing, during which time Karen used profanity against Yates. According to Yates, this made her really upset. After the argument, Karen went home.

Later that night, Karen returned to Laura's home, along with Star and Priscella. Yates and Laura were sitting outside at a table, and Yates was drinking an alcoholic beverage. At some point thereafter, Priscella and Star walked into the backyard. Yates, apparently still upset about the earlier altercation, put her hands around Priscella's neck and began to choke her. This left fingernail marks on Priscella's neck.[7] Yates' version of the event is that Priscella and Star silently approached her and began attacking her. She also claims that Star squeezed her while Karen punched her in the face and broke her dentures.[8]

---

[6] Laura resides at 1313 N. Claymont Street in Wilmington, Delaware

[7] Plaintiff's Exhibit 1 consists of photographs, one of which depicts Yates' long fingernails. Defendants' Exhibit 8 is a photograph of Priscella's neck with significant scratch marks.

[8] Although Laura corroborated Yates' testimony, Defendants' five witnesses testified that no one punched Yates.

3

Upon witnessing the altercation, William "Pokey" Yates (Yates' son) and Star attempted to separate Yates and Priscella.[9] After the altercation, Yates called the police, and stated that two of her nieces assaulted her.[10] The police arrived and investigated for approximately fifteen minutes, but did not make any arrests or issue any citations. Shortly thereafter, Star, Karen, and Priscella left Laura's home.

The next morning, Yates went to the hospital and called the police.[11] The officer arrived at the hospital, and Yates told him that she was assaulted by her nieces the night before. The police report that documents Yates' complaint lists Yates' address as the location of the incident, and only Priscella Brezial and Karen Brezial as the suspects.[12] On July 9, 2013, Yates provided the police with additional information regarding the altercation.[13] Curiously, the supplemental police report adds Star Jackson as an additional suspect. The supplemental report notes in an investigative narrative, that during the initial interview by the officer, Yates mentioned that Star was present but "was not certain exactly how [Star] was involved in the incident."[14] At trial, Yates maintained that the police officer was incorrect in this notation.

After lodging her complaint with the police, Yates brought criminal charges against Star in Family Court. A *nolle prosequi* was entered on those charges. Yates also filed a petition for protection from abuse (PFA) against Defendants in Family Court, which was also dismissed.

---

[9] Laura, Leo Jackson, Mary Brezial, and Star were all consistent in their testimony of this fact.

[10] Defendants' Exhibit 4.

[11] Yates testified that she did not go to the hospital on the night of the altercation because she was caring for her mother, but she maintained that she was injured and bleeding.

[12] Defendants' Exhibit 1. Specifically, the report lists 427 N. Church Street, Wilmington, Delaware as the address of the incident.

[13] Defendants' Exhibit 2.

[14] *Id.* at p. 3. The supplemental report also indicates that Yates' son, William (Pokey) stated that he observed Star grabbing Yates from behind and held her while Karen and Priscella physically attacked Yates. William, however, did not testify during trial and therefore, was not available for cross-examination.

4

## DISCUSSION

The Court is called upon to determine whether Yates has met her burden of proving, by a preponderance of the evidence, that she was assaulted and battered by Defendants and thus, entitled to recover $45,000.00 for her alleged injuries. In a civil context, an assault occurs when a person acts with "the intent of causing a harmful or offensive contact with the person of another, or an imminent apprehension of such contact," and places the person in such imminent apprehension.[15] A civil battery occurs when a person intentionally causes harmful or offensive contact upon another person, without that person's consent.[16] In order for the contact to be offensive or harmful, "it must offend a reasonable sense of personal dignity."[17] However, "[t]he intent necessary for battery is the intent to make contact with the person, not the intent to cause the harm."[18]

In making this determination, the Court serves as the trier of fact in a non-jury trial, and therefore, has the sole responsibility in determining the credibility of each fact witness.[19] In determining witness' credibility, the Court must not only consider the substance of the witness' testimony,[20] but also the behavior and demeanor of the witness during trial.[21] When evidence is in conflict, "the Court must give credit to the portion of the testimony which, in the Court's judgment, is most worthy of credit and disregard any portion of the testimony which in the Court's judgment is unworthy of credit."[22]

---

[15] *Atamian v. Gorkian*, 1999 WL 743663, at at *2 (Del. Super. Aug. 13, 1999).

[16] *Tilghman v. Delaware State University*, 2012 WL 3860825, at *5 (Del. Super. Aug. 15, 2012).

[17] *Brzoska v. Olson*, 668 A.2d 1355, 1361 (Del.1995) (citing *Restatement (Second) of Torts* § 19 (1965)).

[18] *In re Taylor v. Barwick*, 1997 WL 527970, at *3 (Del. Super. Jan. 10, 1997) (citing W. Page Keeton, *et al., Prosser and Keeton on Torts*, § 9 at 39 (5th ed.1984)).

[19] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr. et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).

[20] *Id.* at *4.

[21] *State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).

[22] *Nat'l Grange Mut. Ins. Co.*, 2000 WL 33275030, at *4.

5

After considering all of the evidence, the Court concludes that Yates has not met her burden of proving, by a preponderance of the evidence, that Defendants are civilly liable for assault and battery. Although it is undisputed that an altercation occurred, the Court finds that there are significant discrepancies in Yates' version of the events. The Court cannot reconcile Yates' testimony that on the night of the altercation, Defendants attacked and injured Yates (so badly that her dentures broke and her mouth was bleeding) yet, the police left Laura's home without issuing any citations or making any arrests. The Court also notes that the initial and supplemental police reports both record Yates' statement and make clear that Star, at best, was not involved in the altercation and, at worst, Yates was uncertain of Star's involvement. Yet at trial, several months later, Yates implicated Star as being directly involved in the altercation. This, in the Court's view, does not pass the proverbial "smell test."

The Court also finds that Defendants' witnesses were more credible than Yates' witnesses. Testimony from Defendants' witnesses substantiated their position that they did not physically attack Yates, and that Defendants did not have contact with Yates until Yates choked Priscella. Moreover, Star testified that Laura was not being truthful in her testimony. Specifically, Star stated, "Whatever my aunt says, my grandmom agrees with." Although Laura attempted to corroborate Yates' account of the events, when considering Laura's demeanor, the Court finds that her testimony appeared to be rehearsed.

Throughout trial, Yates spoke in tangents regarding a number of familial issues, singling out different family members and expressing her disappointment in her family members for not helping her care for Laura. The testimony from both sides makes it clear that there is significant dissention among the several members of this large family. Such dissention and unresolved hurts has lead Yates to continue to engage the judicial system in an effort to seek vindication.

6

Yates has been unsuccessful in every claim that she has brought arising from this set of facts. Yates should seek reconciliation with her family members, rather than continue to file legal actions against them. While the Court may provide a structured outlet for emotional quarrels among family members, it cannot restore damaged relationships. This Court can only apply the law to the facts and is constrained by the applicable burden of proof. It is up to the family to put aside their differences, agree wholeheartedly, love one another, and work together with a singular purpose. The Court hopes that Yates realizes that the facts as they exist will never enable her to satisfy the burden necessary to establish her claims against Defendants.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Defendants on Yates' assault and battery claims.

**IT IS SO ORDERED this 16th day of December, 2014.**

The Honorable Sheldon K. Rennie,
Judge